UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MICHAEL WAYNE HANZIK, | § § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 3:16-CV-291 |
| | § | |
| LORIE DAVIS, Director, Texas Department of Criminal Justice, Correctional Institutions Division, | § § § § | |
| Respondent. | § § § | |

## MEMORANDUM OPINION AND ORDER

Former state inmate Michael Wayne Hanzik (TDCJ #01857305) has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1). After reviewing all of the pleadings, the record, and the applicable law under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court concludes that Hanzik's petition must be dismissed as time-barred.

I.  **BACKGROUND**

According to his petition and supporting memorandum, Hanzik pled guilty in state court cause number 70047-A to a felony charge of driving while intoxicated (Dkt. 1 at pp. 2–7). On May 13, 2013, the 23rd District Court of Brazoria County, Texas, sentenced Hanzik to serve six years in prison (Dkt. 1 at p. 2). Hanzik did not file a motion for new trial and did not appeal (Dkt. 1 at p. 3; Dkt. 2 at p. 2). On July 20, 2016, Hanzik filed a state habeas petition, which the Texas Court of Criminal Appeals denied without a written order on September 21, 2016 (Dkt. 1 at p. 4). *See* Texas Court of Criminal

Appeals Case Number WR-85,605-01. Hanzik filed this federal habeas petition on October 3, 2016 (Dkt. 1 at p. 10).[1] The Court ordered Hanzik to show cause why the petition should not be dismissed as time-barred (Dkt. 6); Hanzik has responded (Dkt. 7).

## II. THE ONE-YEAR STATUTE OF LIMITATIONS

This federal habeas petition is subject to the one-year limitations period found in 28 U.S.C. § 2244(d). *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998). Section 2244(d) provides as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is

---

[1] This petition is deemed filed on the date on which Hanzik deposited it into the prison mailing system. *Richards v. Thaler*, 710 F.3d 573, 576 (5th Cir. 2013). The Court is assuming that Hanzik deposited this petition into the prison mailing system on the date on which he signed it.

pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Essentially, subsections (B), (C), and (D) outline exceptions to the general rule, set forth in subsection (A), that a federal habeas petition must be filed within one year after the petitioner's conviction becomes final. *Flanagan*, 154 F.3d at 198. Section (d)(2) tolls limitations during the pendency of a properly filed state habeas petition. *Id.*

Although the statute of limitations is an affirmative defense, district courts may raise the defense *sua sponte* and dismiss a petition prior to any answer if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court[.]" *Kiser v. Johnson*, 163 F.3d 326, 328 (5th Cir. 1999) (quoting 28 U.S.C. foll. § 2254 Rule 4). A district court may dismiss a petition as untimely on its own initiative where it gives fair notice to the petitioner and an opportunity to respond. *Day v. McDonough*, 547 U.S. 198, 209–10 (2006).

### a. The *Birchfield* holding must provide a trigger date for Hanzik's claims, or those claims are untimely.

Under Texas law, Hanzik waived his right to appeal when he pled guilty. *See* TEX. R. APP. P. 25.2(a)(2). That being the case, his conviction became final, and the federal habeas statute of limitations began to run, on May 13, 2013, the date of judgment. *See Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) (holding that if the defendant does not pursue relief on direct appeal through his state's highest court, "the conviction becomes final when the time for seeking further direct review in the state court expires"). Even if Hanzik for some reason did have a right to appeal, he did not file a notice of appeal

within 30 days of the imposition of his sentence as required by the Texas Rules of Appellate Procedure, so his conviction became final on June 13, 2013. *See* TEX. R. APP. P. 26.2(a)(1); *Butler*, 533 F.3d at 317. Limitations therefore ran on either May 13, 2014 or June 13, 2014; and both dates are over two years before the filing date of Hanzik's federal habeas petition. Hanzik's state habeas petition—which he filed in July of 2016— did not toll limitations because he filed it after the limitations period had expired. *Richards v. Thaler*, 710 F.3d 573, 576 (5th Cir. 2013).

Hanzik clearly understands the foregoing analysis but argues that a different trigger date applies; he contends that, under 28 U.S.C. § 2244(d)(1)(C), limitations began to run on the date of the United States Supreme Court's decision in *Birchfield v. North Dakota*, 136 S.Ct. 2160 (2016) (Dkt. 1 at p. 9; Dkt. 7). *See* 28 U.S.C. § 2244(d)(1)(C). The Court disagrees. In *Birchfield*, the Supreme Court held that the search-incident-to-arrest doctrine does not justify the warrantless taking of a blood sample in DWI cases and that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense. *Birchfield*, 136 S.Ct. at 2185–86. When the standard set out by the Supreme Court for determining retroactivity is applied, it is clear that the *Birchfield* holding was not made retroactively applicable to drunk-driving cases on collateral review, though it might be retroactively applicable on collateral review to cases in which the petitioners were convicted of violating implied-consent laws. First, *Birchfield* does not explicitly state that it is to be applied retroactively. *See Tyler v. Cain*, 533 U.S. 656, 663 (2001) ("We thus conclude that a new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive."). Second,

the *Birchfield* opinion does not meet either exception to the *Teague* bar when it is viewed in the context of convictions under drunk-driving statutes. *See id.* at 664–67 & n.7; *see also id.* at 668–70 (O'Connor, J., concurring).

### b. *Birchfield* did not establish a new substantive rule forbidding the punishment of drunk drivers.

*Teague v. Lane*, 489 U.S. 288 (1989), bars retroactive application of new rules of Constitutional criminal procedure on federal habeas corpus review. *Beard v. Banks*, 542 U.S. 406, 408, 416 (2004). In order for a new Constitutional rule to apply retroactively to cases that became final before the rule's announcement, the rule must fit one of the two exceptions also set forth in *Teague*. *In re Williams*, 806 F.3d 322, 325 (5th Cir. 2015). The first exception includes new substantive rules forbidding criminal punishment of certain primary conduct[2] or prohibiting certain categories of punishment for classes of defendants on account of status or offense.[3] *Id.* Hanzik, who pled guilty because a warrantless blood draw revealed that his blood alcohol content was over the legal limit, argues that the *Birchfield* holding falls within this exception because the *Birchfield* opinion invalidates implied-consent laws that impose criminal penalties for refusal to submit to a warrantless blood draw (Dkt. 7 at p. 6). *Birchfield*, 136 S.Ct. at 2185–86. But

---

[2] For instance, the famous Supreme Court opinions in *Loving v. Virginia*, 388 U.S. 1 (1967), and *Griswold v. Connecticut*, 381 U.S. 479 (1965), established such substantive rules when they invalidated statutes criminalizing, respectively, interracial marriage and contraception. These examples are listed in footnote 7 of Justice Harlan's separate opinion in *Mackey v. United States*, which can be found at 91 S.Ct. 1171 (1971) and helped form the basis for the *Teague* framework. *See Montgomery v. Louisiana*, 136 S.Ct. 718, 729 (2016).

[3] An example of this type of substantive rule would be the rule announced in *Atkins v. Virginia*, 536 U.S. 304 (2002), where the Supreme Court barred the execution of the mentally disabled. *See Bell v. Cockrell*, 310 F.3d 330, 332 (5th Cir. 2002) (applying *Atkins* retroactively); *see also Penry v. Lynaugh*, 492 U.S. 302, 330 (1989).

that is a far cry from forbidding the imposition of criminal punishment for *drunk driving*, which is the crime for which Hanzik was incarcerated. As it pertains to prosecutions under drunk-driving statutes, *Birchfield*'s discussion of implied-consent laws simply holds that voluntary consent to a warrantless blood draw cannot be fairly inferred solely from a motorist's decision to drive on public roads when the State threatens the motorist with a criminal penalty (as opposed to a civil penalty or evidentiary consequences) for refusing the blood draw. *Id.* ("There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads."). However, consistent with the Supreme Court's Fourth Amendment jurisprudence, other circumstances can establish voluntary consent. *Id.* Moreover, if the prosecution can establish another basis on which to justify the warrantless blood test—such as exigent circumstances—consent is not necessary. *Id.* In short, *Birchfield* does not categorically bar even the taking of warrantless blood tests in drunk-driving cases, let alone the punishment of drunk drivers.

In other words, for *Teague* purposes, when a habeas petitioner is challenging a conviction under a drunk-driving statute, *Birchfield* presents, at bottom, a matter of pure criminal procedure, not a matter involving a new substantive rule. In a recent opinion, the Supreme Court explained the difference:

> Substantive rules, then, set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose. It follows that when a State enforces a proscription or penalty barred by the Constitution, the resulting conviction or sentence is, by definition, unlawful. Procedural rules, in contrast, are designed to enhance the accuracy of a conviction or sentence by regulating the manner of determining the defendant's culpability. Those rules merely raise the

> possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise. Even where procedural error has infected a trial, the resulting conviction or sentence may still be accurate; and, by extension, the defendant's continued confinement may still be lawful. For this reason, a trial conducted under a procedure found to be unconstitutional in a later case does not, as a general matter, have the automatic consequence of invalidating a defendant's conviction or sentence.
>
> *Montgomery v. Louisiana*, 136 S.Ct. 718, 729–30 (2016) (quotation marks, citations, and emphasis removed).

The *Birchfield* holding does not fit within the first *Teague* exception when the habeas petitioner is challenging a drunk-driving conviction. The question of whether a state may criminalize a suspected drunk driver's refusal to submit to a warrantless blood draw has nothing to do with whether that state may criminalize drunk driving itself; it relates solely to the issue of how the Fourth Amendment allows the culpability for drunk driving to be determined.

### c. *Birchfield* did not identify a "watershed" rule of criminal procedure.

To succeed here, then, Hanzik must establish the second *Teague* exception, which covers "a small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding . . . or implicit in the concept of ordered liberty." *Williams*, 806 F.3d at 325 (quotation marks and footnotes omitted). The Court notes that the second exception is, by the Supreme Court's design, extremely narrow. As the Supreme Court has put it, "any qualifying rule would be so central to an accurate determination of innocence or guilt that it is unlikely that many such components of basic due process have yet to emerge[.]" *Beard*, 542 U.S. at 417 (quotation marks and brackets

omitted). The Supreme Court has, in fact, never held that a new rule fell under the second *Teague* exception; and it has only given one example of a rule that even "might" do so: the right to counsel announced in *Gideon v. Wainwright* in 1963. *Id.*; *see also Williams*, 806 F.3d at 325. Fourth Amendment jurisprudence seems particularly unlikely ever to produce a "watershed rule" within the meaning of *Teague*. In *Stone v. Powell*, 428 U.S. 465, 494–95 (1976), the Supreme Court held that a federal court may not grant habeas relief to a state prisoner on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial, unless the prisoner was denied a full and fair opportunity to litigate his Fourth Amendment claim in the state courts. The *Stone* Court grounded this policy decision on its telling description of the Fourth Amendment exclusionary rule as a "diver[sion] from the ultimate question of guilt or innocence that . . . deflects the truthfinding process, and often frees the guilty." *Id.* at 490. Since the *Teague* "watershed rule" exception only concerns itself with rules that are "central to an accurate determination of innocence or guilt"—*Beard*, 542 U.S. at 417 (quotation marks omitted)—it is hard to see how the exception would ever embrace any expansion of a rule that the Supreme Court considers a "diversion" from that very determination. The Court therefore holds that 28 U.S.C. § 2244(d)(1)(C) does not provide the limitations trigger date for any of Hanzik's claims. Even assuming that *Birchfield* set down a substantive prohibition (as defined in the *Teague* framework) barring the criminal punishment of a motorist for refusing to submit to a warrantless blood test, that rule does not apply to Hanzik's federal habeas petition, which does not challenge a conviction for violating an implied-consent law.

The statute of limitations barred this petition on June 13, 2014, at the latest. No special circumstances exist, and no tolling doctrines apply. The Court will dismiss Hanzik's federal habeas petition.

## III. CERTIFICATE OF APPEALABILITY

The federal habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), codified as amended at 28 U.S.C. § 2253. Therefore, a certificate of appealability is required before an appeal may proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also

that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the Court concludes that reasonable jurists would not find its assessment and ruling debatable or wrong. Because the petitioner does not otherwise allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

IV. **CONCLUSION**

Based on the foregoing, the Court **ORDERS** as follows:

1. The habeas corpus petition is **DENIED**, and this case is **DISMISSED** with prejudice.

2. A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Galveston, Texas, on November 6, 2017.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE